IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| George Robert Owens, ) | |
| ) | Civil Action No. 6:06-1254-MBS-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on September 10, 2003, alleging that he became unable to work on January 1, 2003. The application was denied initially and on reconsideration by the Social Security Administration. On August 11, 2004, the plaintiff requested a hearing. The administrative law judge, before

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

whom the plaintiff, his attorney, and a vocational expert appeared on June 13, 2005, considered the case *de novo*, and on November 3, 2005, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on February 22, 2006. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits through the date of this decision.
>
> (2) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3) The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b)).
>
> (4) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.
>
> (5) The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (6) The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).
>
> (7) The claimant has the residual functional capacity to perform a significant range of light work activity on a sustained basis or work that involves lifting no more than 20 pounds occasionally or lifting and carrying up to 10 pounds frequently, a good deal of walking or standing or sitting most of the time with some pushing and pulling of arm or leg controls (20 CFR § 404.1567).

(8) The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

(9) The claimant is 48 years old which is a "younger individual" (20 CFR § 404.1563).

(10) The claimant has a high school education (20 CFR § 404.1564).

(11) The claimant has no transferable skills from any past relevant work (20 CFR § 404.1568).

(12) Although the claimant's exertional limitations do not allow him to perform the full range of light work, considering the testimony of the vocational expert at the hearing and using Medical-Vocational Guidelines 202.22 as a framework for decision-making, there are a significant number of light, unskilled jobs in the economy that he could perform. Examples of such sedentary and light semi-skilled jobs are: tester, 3,000-4,000 in the local economy 250,000-275,000 in national economy; counter attendant, 6,000-8,000 in local economy 375,000-400,000 in national economy; order taker, 4,000-6,000- in local economy, 350,000-375,000 in national economy. If someone can do light work, we determine that he/she can also do sedentary work.

(13) Since the claimant is capable of performing a significant range of light work, a finding of "not disabled" is therefore reached within the framework of Medical-Vocational Guidelines 202.22 of Table No. 2.

(14) The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and

who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. §404.1503(a).  *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the

national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff completed high school and worked in the vocationally relevant past as a sheet metal worker (Tr. 50, 53). He alleges that he became disabled on January 1, 2003, at age 45, due to a bulging disc in his lower back and diabetes (Tr. 49, 55). He was 48 years old at the time of the ALJ's decision (Tr. 55).

The record reveals that the plaintiff has had a history of diabetes since 1989, and a history of low back problems since 1999, including intervertebral disc disease of the lumbar spine with radiculopathy at L5-S1, which produced low back and right leg pain (Tr. 85, 149-65, *see* 278, 284). He took disability leave at his job on December 31, 2002 (Tr. 278). Between 2003 and 2005, spinal specialist Dr. Charles J. Nivens treated the plaintiff's back problems (Tr. 102-65), and physicians at Lafitte and Warren Medical Center (Lafitte) treated his diabetes (Tr. 88-99).

On May 4, 2003, the plaintiff was involved in a motor vehicle accident and subsequently reported increased low back pain and right leg pain. By May 22, 2003, he reported that his pain was significantly better (Tr. 133).

Electrodiagnostic tests performed on June 20, 2003, showed the plaintiff had "classic radiculopathy" with decreased sensation in his right leg, but there was no evidence of diabetic neuropathy. The same day, Dr. Nivens noted that the plaintiff had no work limitations and that he would be returning to work at "full duty" on June 30, 2003 (Tr. 127-30).

On August 13, 2003, Dr. D.C. Pratt evaluated the plaintiff in connection with his request for permanent disability status through his employer. Dr. Pratt noted that the plaintiff had a "long history of intervertebral disc disorder in the lumbar spine, as well as spondylolisthesis," and that he had "missed considerable time from work over the last five years." He concluded that the plaintiff was "not able to do all of the duties that are required of a sheetmetal worker and recommend that he be considered for an incapability pension." Dr. Pratt checked boxes indicating that the plaintiff would "be trainable in a skill that could qualify him . . . for other employment" (Tr. 86-87).

On August 28, 2003, Dr. Nivens completed an "Attending Physician's Statement of Disability," and found that the plaintiff's degenerative disc disease caused him

to become "unable to return to work" as of July 31, 2003. He listed the following restrictions:

> No Lifting 50 [pounds]. No Lifting 30 [pounds] repetitively. No bending, pushing or pulling, twisting or turning. Must alternate sitting and standing.

Dr. Nivens indicated that the plaintiff would be capable of performing "sedentary" work[2] (Tr. 144).

On September 21, 2003, Dr. Nivens wrote a letter stating that the plaintiff had herniated and bulging discs in his lumbar spine, with grade 1 spondylolisthesis of L5 on S1, which caused chronic low back and lower extremity pain, and nerve damage in his right lower extremity. He concluded,

> At this point, I do feel [Plaintiff] is disabled from working at his previous job. As far as any future type of employment, any type of laborious activity would be contra-indicated. I do feel that he will not be able to lift 50 lbs. at all. He should not lift anything more than 20 lbs. on a repetitive nature [sic]. He should avoid any excessive bending and/or lifting. He should also alternate between sitting and standing on [sic] an 8-hour workday. Again, any type of employment that he is going to be having should be at a sedentary type of work status.

(Tr. 120).

On November 10, 2003, Dr. Nivens completed an "Evidence of Record Medical Report," in which he stated that the plaintiff had right lower extremity pain and burning, with dysasthesias (abnormal sensations) in the right thigh and "occasional" numbness. He noted there was no right lower extremity weakness, that deep tendon reflexes were symmetrical, and that the plaintiff had full 5/5 motor strength, with no focal

---

[2]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

sensory deficits. On examination, the plaintiff demonstrated pain with lumbar flexion and rotation, and a straight leg raise test was positive on the right. Dr. Nivens indicated that the plaintiff had received several nerve root block injections and lumbar epidural steroid injections during 2003. He assessed the following limitations:

> No lifting over 50 [pounds], No repetative [sic] lifting of 30 [pounds]. No repetative [sic] bending, lifting, turning, pushing or pulling. [Plaintiff] is to alternate between sitting and standing.

(Tr. 116-17).

On December 12, 2003, Dr. Fulton J. Gasper, an ophthalmologist, evaluated the plaintiff's eyesight in connection with his application for benefits. Dr. Gasper found the plaintiff's visual acuity was 20/40 bilaterally without correction, and 20/25 bilaterally with correction. He assessed "mild background diabetic retinopathy," but indicated that the plaintiff did not have any eye condition that required treatment at that time (Tr. 100-01).

On December 23, 2003, Dr. Nivens found the plaintiff had an unremarkable mental status examination, and that he was "mentally normal" (Tr. 113).

Also on December 23, 2003, State agency physician Dr. W.B. Hopkins reviewed the plaintiff's records and assessed his physical residual functional capacity. Dr. Hopkins found the plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand/walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. He found the plaintiff could "occasionally" climb, balance, and stoop, and "frequently" kneel, crouch, and crawl. Dr. Hopkins did not find the plaintiff had any other limitations. He noted that Dr. Nivens' restriction of the plaintiff to sedentary work was "too restrictive" and "not justified by physical findings" (Tr. 174-81).

During 2004, the plaintiff continued to see Dr. Nivens periodically for his back pain (Tr. 102-12). On May 20, 2004, Dr. Nivens noted that the plaintiff's pain was "much better," and that it was "intermittent." He did not note any weakness or numbness in any

of the extremities. On examination, the plaintiff had full 5/5 motor strength, symmetrical reflexes, and no focal sensory deficits. His gait was normal (Tr. 102-03).

Also during 2004, the plaintiff received frequent follow-up care at Lafitte for his diabetes. The records from Lafitte typically indicated that his diabetes was either "uncontrolled" or under "poor control" (Tr. 213-14, 218).

Between January and March 2005, the plaintiff developed ulcerations on both feet as complications of diabetes. He was treated by podiatrist Janaki Nadarajah, D.P.M., who noted on March 17, 2005, that the plaintiff's ulcerations had "healed well" and were no longer open or infected. She assessed diabetes with neuropathy and healed ulcerations on the bilateral distal hallux. Dr. Nadarajah directed the plaintiff to wear diabetic shoes and shoe inserts and advised him on diabetic foot care, to include application of medicated lotion twice per day (Tr. 182-212).

At the administrative hearing, the plaintiff testified that he had been diabetic since 1989 and that his back pain had begun in 1999 (Tr. 278, 284). He said that injections alleviated his back pain until 2002 (Tr. 278) and that he had declined back surgery because he was told it was a last resort (Tr. 282-83). He said that he used a cane when he had to do a lot of walking (Tr. 281-82) and that he generally wore flip-flops instead of regular shoes due to his diabetes (Tr. 295). He said he saw an eye doctor once per year (Tr. 280) and that he used "regular reading glasses" (Tr. 283). The plaintiff reported numbness in his fingers that produced grip problems early in the morning (Tr. 290-91) and indicated that he had experienced the neuropathy symptoms when he was still working (Tr. 290). He said his pain went down his right side and into both feet and that he experienced numbness in his feet and swelling and cramps in his legs (Tr. 288, 292-93). He said he soaked his feet two to three times per day to prevent wound infections (Tr. 294).

As to his abilities and activities, the plaintiff testified that he could sit for 10 to 30 minutes at a time (Tr. 287) and walk 10 to 30 minutes with a cane, or five to 10 minutes

without a cane (Tr. 288). He said he was afraid to do any lifting and that he lifted no more than five pounds (Tr. 289). He said that he sometimes required help with bathing and dressing (Tr. 285), that he mostly stayed around the house due to foot pain (Tr. 286), and that he read the newspaper and napped at times (Tr. 287).

Vocational expert Carey Washington, Ph.D., testified that the plaintiff's past relevant work as a sheet metal worker was medium[3] in exertion (Tr. 296-97). Dr. Washington testified that the plaintiff had the following transferrable skills: layout work, assembly work, repair work, interpreting blueprints, sketching and following specifications in sequence (Tr. 297). The ALJ asked Dr. Washington the following hypothetical question:

> [T]hese are going to be questions about a person who is not necessarily the claimant but someone who has the same age, education, and past relevant work experience as the claimant, and someone who has the same impairments. That is to say, diabetic neuropathy in his feet and hands, insulin dependent diabetes, some possible retinopathy resulting fr[o]m the diabetes, herniated discs and bulging discs in his spine, with a grade one spondylosis at L5/S1. . . . And he's not only gotten neuropathy of the feet, but he's also had wounds that have been a long time in healing on both feet. Okay. Now for our first hypothetical person we're going to try the residual functional capacity as set forth in a statement from the claimant['s] treating physician, Charles J. Nivens, M.D., on September 21, 2003. And, starting at the fourth sentence it says, "At this point I do feel Mr. Owens is disabled from working at his previous job. As far as any future type employment, any type of laborious activity would be contra-indicated. I do feel that he will not be able to lift 50 pounds at all. He should not lift anything more than 20 pounds on a repetitive nature [sic]. He should avoid any excessive bending or lifting. He should also alternate between sitting and standing in an eight hour work day. Again, any type of employment that he is going to be having should be at a sedentary type of work status."

---

[3]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary or light work." 20 C.F.R. § 404.1567(c). U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT), (4th ed., Rev. 1991).

10

(Tr. 297-98). In response, Dr. Washington testified that the individual could not perform the plaintiff's past work. He testified that the individual could perform other work, including the sedentary job of tester (DOT # 726.261-018, 3,000 to 4,000 jobs in the State and 250,000 to 275,000 jobs in the nation), and the light[4] jobs of counter attendant (DOT # 369.477-018, 6,000 to 8,000 jobs in the State and 375,000 to 400,000 jobs in the nation) and order taker (DOT # 249.362-026, 4,000 to 6,000 jobs in the State and 350,000 to 375,000 jobs in the nation) (Tr. 299).

In response to a separate hypothetical question, Dr. Washington testified that if all of the plaintiff's testimony was taken as completely credible, a hypothetical individual with the degree of limitation the plaintiff described would be unable to perform any work (Tr. 300).

## **ANALYSIS**

The ALJ found that the plaintiff had the residual functional capacity to perform "light work on a sustained basis" (Tr. 17, 19-20). He further determined that the plaintiff could not perform his past work but could perform other work existing in significant numbers in the national economy (Tr. 18, 20). The plaintiff alleges that the ALJ erred by failing to properly consider his subjective complaints and credibility.

The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . .

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

11

> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)  the individual's daily activities;

(2)  the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)  factors that precipitate and aggravate the symptoms;

(4)  the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)  treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)  any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying

> flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

As set forth above, at the administrative hearing, the plaintiff testified that he had been diabetic since 1989 and that his back pain had begun in 1999 (Tr. 278, 284). He said that injections alleviated his back pain until 2002 (Tr. 278) and that he had declined back surgery because he was told it was a last resort (Tr. 282-83). He said that he used a cane when he had to do a lot of walking (Tr. 281-82) and that he generally wore flip-flops instead of regular shoes due to his diabetes (Tr. 295). He said he saw an eye doctor once per year (Tr. 280) and that he used "regular reading glasses" (Tr. 283). The plaintiff reported numbness in his fingers that produced grip problems early in the morning (Tr. 290-91) and indicated that he had experienced the neuropathy symptoms when he was still working (Tr. 290). He said his pain went down his right side and into both feet and that he experienced numbness in his feet and swelling and cramps in his legs (Tr. 288, 292-93). He said he soaked his feet two to three times per day to prevent wound infections (Tr. 294).

As to his abilities and activities, the plaintiff testified that he could sit for 10 to 30 minutes at a time (Tr. 287) and walk 10 to 30 minutes with a cane, or five to 10 minutes without a cane (Tr. 288). He said he was afraid to do any lifting and that he lifted no more than five pounds (Tr. 289). He said that he sometimes required help with bathing and dressing (Tr. 285), that he mostly stayed around the house due to foot pain (Tr. 286), and that he read the newspaper and napped at times (Tr. 287).

The ALJ found that the plaintiff's "allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision" (Tr. 19). However, in the body of the decision, the ALJ did not discuss the plaintiff's credibility at all. Clearly, the

13

objective medical evidence shows the existence of medical impairments that result from anatomical, physiological, or psychological abnormalities and that could reasonably be expected to produce the pain or other symptoms alleged. *See Craig*, 76 F.3d at 595. Accordingly, at the second step, the ALJ should evaluate the intensity and persistence of the plaintiff's subjective symptoms and the extent to which they affect his ability to work. The defendant argues that "the ALJ was entitled to discount Plaintiff's subjective complaints where inconsistencies were apparent in the record as a whole" (def. brief 10). However, post-hoc rationalizations are prohibited. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."). Because the ALJ did not state the factors and evidence upon which he relied in evaluating the plaintiff's credibility, it is impossible for this court to determine whether his finding was based upon substantial evidence. Accordingly, the case should be remanded to the ALJ for an assessment of the plaintiff's subjective symptoms and credibility in accordance with the above-cited law.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

                                                     s/William M. Catoe
                                                     United States Magistrate Judge

March 14, 2007

Greenville, South Carolina